UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-9482-DMG (ASx)** | Date | August 6, 2021 |
|---|---|---|---|
| Title | ***Vampire Family Brands, LLC v. MPL Brands, Inc., et al.*** | Page | 1 of 13 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTIONS TO DISMISS [18, 19]**

Plaintiff Vampire Family Brands, Inc. ("VFB") initiated this action on October 15, 2020, against MPL Brands, Inc. ("MPL"); MPL Brands NV, Inc., doing business as Patco Brands ("Patco"); and Pyramid Inc. [Doc. # 1.] In its Complaint, VFB alleges violations of the Lanham Act, 15 U.S.C. § 1051 *et seq*., as well as the California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200 *et seq*., and False Advertising Law ("FAL"), Cal. Bus. and Prof. Code § 17500 *et seq*. *Id.* On December 11, 2020, VFB voluntarily dismissed Pyramid Inc. from the Complaint. [Doc. # 17.]

On December 23, 2020, MPL and Patco each filed separate Motions to Dismiss ("MTD") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Patco MTD [Doc #18]; MPL MTD [Doc. #19]. The MTDs are fully briefed. [Doc. ## 32, 37, 38, 47.]

Having considered the parties' written submissions, the Court now **GRANTS** in part and **DENIES** in part each MTD.

## I.
## JUDICIAL NOTICE

In support of their respective positions, the parties request that the Court take judicial notice of numerous and diverse materials. Federal Rule of Evidence 201 permits a court to judicially notice facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants request that the Court take judicial notice of exhibits which fall into the following categories: (1) records from proceedings in other courts involving VFB, (2) screenshots of VFB's website and online crowdfunding page, (3) government records issued by

the Alcohol and Tobacco Tax and Trade Bureau ("TTB") and United States Patent and Trademark Office ("USPTO"), (4) screenshots of dictionary definitions for "vampire" and "cocktail, (5) screenshots of Wikipedia articles, (6) screenshots of articles about margaritas and other cocktails on third-party websites, (7) screenshots of recipes found on third-party websites, (8) labels and packaging for Defendants' products at issue in this case, and (9) a screenshot of a Google search query for the term "vampiro." Patco Request for Judicial Notice ("RJN") [Doc. # 18-1]; MPL RJN [Doc. # 19-1]; Patco Supplemental RJN [Doc. # 46].

VFB requests judicial notice of eight exhibits. These items fall into the following categories: (1) dictionary definitions found in both standard dictionary sources as well as the crowdsourced website UrbanDictionary.com, and (2) certificates of label approval and other documentation issued by the TTB and found on the agency's website. Machat Decl. at ¶ 98 [Doc. # 33]. VFB's counsel, Michael Machat, attaches other exhibits to his declaration in support of VFB's Oppositions, but does not request that the Court take notice of them.

A court may take notice of government documents and records obtained from reliable sources, such as the TTB and the USPTO. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd*, 678 F. App'x 594 (9th Cir. 2017). Court filings and orders issued in related litigation are likewise proper subjects of judicial notice. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of matters of court filings and other matters of public record). Courts routinely take notice of dictionary and encyclopedia definitions, although not from sources such as Wikipedia where virtually anyone is allowed to modify the entry. *Compare Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803 (9th Cir. 1989) (taking notice of the Webster's Dictionary definition of the word "fraction") *with Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (determining that a Wikipedia article is not capable of accurate and ready determination and thus not appropriate for judicial notice).

Although websites can be noticed for the mere fact of their publication and not for the truth of a matter, courts are hesitant to take notice of these sources when the facts within them are disputed, when their accuracy has not been established, or when a request for notice of a website is objected to. *See Gerritsen*, 112 F. Supp. 3d at 1028-29; *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV 17-02223-AB (AJWx), 2017 WL 7201872, at *2-3 (C.D. Cal. Oct. 19, 2017). The results of a Google search history are likewise not proper subjects for judicial notice because of the dynamic and constantly changing nature of the Google search system. *See Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, No. CV 15-00954 BRO (PJWx), 2015 WL 12765467, at *3 (C.D. Cal. Sep. 21, 2015). Finally, courts may consider a document that is incorporated by reference into a complaint because the plaintiff refers extensively to the

document or the document forms the basis of the plaintiff's claim. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Accordingly, the Court **GRANTS** the parties' RJNs for the following categories of documents: (1) records, certificates, and other documentation published by the TTB and USPTO, (2) dictionary entries, except those which can be modified by any individual, such as on Wikipedia and Urban Dictionary, and (3) records from related judicial proceedings. It is important to note that, although many materials submitted by the parties may be noticed, the Court takes notice of only those facts that are relevant and ultimately utilized in the analysis below. *See Threshold Enters. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

The Court **DENIES** requests for notice of screenshots of third-party websites and the results of a Google search. The Court also does not rely on VFB's non-noticeable exhibits or extraneous declarations to decide Defendants' Rule 12(b)(6) motions. [*See* Doc. ## 33, 34.] The Court **DENIES** Patco's request to convert its MTD into a Rule 56 motion for summary judgment. Patco MTD at 19.

Because labels and packaging of Defendants' products and VFB's website and related pages are incorporated by reference in the Complaint and central to VFB's claims, the Court may rely on those exhibits in rendering its decision.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

VFB is a Los Angeles based importer, distributer, and marketer of a variety of vampire-themed products including wine, vodka, chocolate, coffee and more. Compl. at ¶¶ 8, 13. VFB owns several trademarks including "Vampire," specifically for wine and pre-mixed alcoholic beverages other than beer, and "Vampyre," specifically for spirits. *Id.* at ¶¶ 8, 16. Some of VFB's trademarks, including "Vampire" and "Vampyre," have become incontestable by virtue of their extended use in commerce. *Id.* at ¶ 9. VFB's marks are visible to the public in many places, including on VFB's website, in the public records of the USPTO, and in various national media due to VFB's continuous marketing of its products. *Id.* at ¶¶ 17, 26.

In 2017, VFB began selling a pre-mixed canned Bloody Mary cocktail it marketed as "Vampire Gourmet Bloody Mary Cocktail" (the "Vampire Bloody Mary"). *Id.* at ¶ 18. This product is the only cocktail produced by VFB and is at the center of the claims made by VFB in

this case. VFB asserts that the Vampire Bloody Mary is made with actual tomatoes and vodka. *Id.* at ¶¶ 22, 34.

MPL and its affiliate Patco are distributors of alcohol products throughout the United States. *Id.* at ¶¶ 4-5. VFB alleges that either MPL owns or controls Patco, or MPL and Patco are alter egos, or both are under common ownership or control. *Id.* at ¶ 5. One of those products is a pre-mixed alcoholic cocktail labeled "Vampiro" and distributed under Patco's Gran Agave Mix banner (the "Vampiro Cocktail"). *Id.* at ¶ 20. The Vampiro Cocktail label asserts that it is "a fizzy grapefruit cocktail" made with "100% Blue Agave," although the ingredients list does not contain grapefruit. *Id.* at ¶¶ 21-22, Ex. A; Patco RJN, Ex. 22 [Doc. # 18-5]. It is made of "agave wine," not from distilled spirits. *Id.* at ¶ 34. Defendants also produce and distribute beverages marketed as a ready-to-drink "margarita wine cocktail" under their Rancho La Gloria product line (the "Margarita Cocktail"). The Rancho La Gloria Margarita Cocktail does not contain tequila or any distilled spirit. *Id.* at ¶¶ 31-32, Ex. B; MPL Brands RJN, Ex. M [Doc. # 19-5]. Instead, it is made with agave wine.

VFB asserts six claims in total against Patco and MPL. Counts I, II, and III, based on the Vampiro Cocktail, are trademark infringement claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Count IV, based on the Margarita Cocktail, arises from the Lanham Act's prohibition on false designations or origin and false descriptions. Counts V and VI for violations of California's UCL and FAL are based on both the Vampiro Cocktail and Margarita Cocktail.

With respect to Defendants' Vampiro Cocktail, VFB alleges that it constitutes trademark infringement of VFB's Vampire and Vampyre marks and will lead to source confusion and false association among consumers. Compl. at ¶ 29. VFB further alleges that the Vampiro Cocktail label's claims that it is made from 100% agave and with grapefruit are false advertising that will tarnish and dilute VFB's marks. *Id.* at ¶¶ 21, 22. As for the Rancho La Gloria Margarita Cocktail, VFB alleges that a real "margarita" is made with tequila and, therefore, the absence of tequila from Defendants' Margarita Cocktail means that Defendants are falsely advertising and deceiving the public and creating unfair competition for others in the industry. *Id.* at ¶ 32. In addition, VFB asserts that use of the word "cocktail" on Defendants' Margarita Cocktail is false advertising because the product is not made with a distilled spirit. *Id.* at ¶ 33. Because the alcohol tax is approximately ten times that of the tax on wine, VFB argues that Defendants gain an unfair competitive advantage against it and other makers of alcoholic cocktails that use distilled spirits, rather than wine, in their cocktail recipes. *Id.* at ¶¶ 35-36.

Patco and MPL separately filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Patco's MTD addresses the trademark and UCL

claims based on the Vampiro Cocktail, Counts I, II, II, and V, because Patco asserts that it was not involved in the production or sale of the Rancho La Gloria Margarita Cocktail. Patco MTD at 7 [Doc. # 18.] MPL's MTD addresses the false advertising claims, Counts IV, V and VI, based on the Margarita Cocktail, arguing that VFB lacks standing under Article III, the Lanham Act, the UCL, and the FAL to state claims based on the Margarita Cocktail's alleged false advertising. [Doc. # 19.] Patco's MTD specifically notes that the Complaint also alleges false advertising claims based on the Vampiro Cocktail and that MPL's arguments regarding the false advertising claims based on the Margarita Cocktail also apply to the false advertising claims based on the Vampiro Cocktail. Patco MTD at 7, 27.

Each Defendant then filed a notice of joinder in the other's motion. [Doc. ## 20, 21.] VFB contends that Defendants failed to comply with Local Rule 7-3 as to each separate motion.[1] But because both motions have been fully briefed, the Court will resolve both motions in the interest of efficiency. Any further violations of the Local Rules or the Court's Orders, however, may result in the summary denial of the motion or imposition of sanctions.

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1) a defendant may raise either a facial or a factual challenge to a federal court's jurisdiction on the ground of lack of subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When resolving a facial attack, a court "take[s] the allegations in the plaintiff's complaint as true." *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005). When resolving a factual attack, a court does not presume the truthfulness of a complaint's factual allegations, and it may consider affidavits or other evidence without converting the motion to dismiss into one for summary judgment. *See Safe Air*, 373 F.3d at 1039. Defendants' argument that VFB lacks constitutional standing represents a factual attack.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a pleading must articulate "enough facts to state a claim to relief that is

[1] Patco's MTD does not include a Local Rule 7-3 compliance statement in its notice of motion [Doc. # 18], but MPL's MTD does [Doc. # 19].

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

## IV. DISCUSSION

The Court addresses first Defendants' arguments for dismissing the trademark infringement claims for use of the term "Vampiro" in marketing their fizzy grapefruit cocktail, before turning to Defendants' arguments as to the VFB's false advertising and unfair competition claims.

### A. Counts I, II, and III: Trademark Infringement[2]

VFB alleges three trademark infringement claims under the Lanham Act against both Defendants. Although VFB articulates the bases of liability only at a general level, it appears to allege the following: (1) false designation of origin and under 15 U.S.C section 1125(a)(1)(A), (2) unlawful reproduction or trademark imitation under 15 U.S.C section 1114(1), and (3) trademark dilution under 15 U.S.C section 1125(c). Compl. ¶¶ 38-68.

Defendants argue that the term "Vampiro" is the generic name of a Mexican cocktail or, alternatively, that the use of the term "Vampiro" constitutes fair use and is thus non-actionable. Patco MTD at 20.[3] The Court addresses each argument in turn.

[2] Defendants do not challenge the Court's subject matter jurisdiction over the three trademark infringement claims, and the Court is independently satisfied of its jurisdiction and VFB's standing to bring these claims.

[3] All page references herein are to page numbers inserted by the CM/ECF system.

**1. Genericity**

It is a fundamental tenet of trademark law that the generic name of a thing cannot serve as a source identifier. 2 McCarthy on Trademarks and Unfair Competition § 12:1 (5th ed.). Accordingly, generic terms are not registrable as trademarks. *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1985). A generic term is "one that refers to the genus of which the particular product is a species." *Id.* The appropriate test for determining whether a mark is generic is the primary significance of the mark to the general public. *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996). The decision of whether a term is generic is fact intensive, and because of this, some courts are hesitant to resolve the question at the pleading stage. *See Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 994 (N.D. Cal. 2014) ("whether a mark is generic requires a fact-specific inquiry that generally is premature at the pleading stage"); *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 330 (E.D.N.Y. 2009) (refusing to decide whether a term was generic at the motion to dismiss stage). Other courts, including in this district, have found it possible to determine the question of genericity on a 12(b)(6) motion to dismiss. *See U.S. Vessel Documentation v. Form Techs.*, No. SA CV 17-00823-CJC(JCGx), 2017 U.S. Dist. LEXIS 228593, at *8 (C.D. Cal. Sep. 21, 2017) (finding the name "U.S. Vessel Documentation" generic in part because the plaintiff did not specifically argue otherwise).

The term "Vampiro" is not itself currently registered by either party.[4] When a trademark is not registered, the presumption of validity does not apply, and the plaintiff bears the burden of demonstrating that the mark is non-generic. *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). VFB has provided judicially noticeable screenshots showing no results found for "Vampiro" in the Merriam-Webster or Cambridge dictionaries, or dictionary.com. Machat Decl., Ex. 11, 13, 15 [Doc. ## 33]. VFB also argues that, even if "Vampiro" is a generic term for a popular cocktail in Mexico, that does not mean it is also a generic term to the public in the United States. *See Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 642 (8th Cir. 1984) (noting that the same term can be generic in one country and suggestive in another). VFB has thus met its burden at this stage of litigation to allege that "Vampiro" is not a generic term.

With the burden shifting to Defendants to prove genericity, Defendants submit a variety of exhibits, only some of which can be considered in deciding a Rule 12(b)(6) motion to dismiss.

---

[4] VFB applied to register the mark Vampiro for use in alcoholic drinks in December 2020, and the application is still pending. Supplemental RJN, Ex. 23. Patco filed an opposition to the application in accordance with USPTO procedures. Supplemental RJN, Ex. 24.

Of those noticeable, the only relevant item to the questions of genericity is a dictionary definition of the word "Vampiro." Patco RJN, Ex. 6. But Patco's proffered dictionary definition from Collins Dictionary does not mention a cocktail, and defines or translates "Vampiro" solely as "vampire or "vampire bat." *Id.* In the absence of any evidence indicating that the primary significance of the term "Vampiro" to the relevant public is a cocktail, Defendants' arguments do not succeed at the pleadings stage.

**2. Fair use**

Defendants alternatively argue that even if the term "Vampiro" is not generic, their utilization of the word constitutes fair use. Patco MTD at 24. Under the Lanham Act, a defendant is not liable for trademark infringement if its use of a trademark is fair. 15 U.S.C. § 1115(b)(4). There are two types of fair use: nominative fair use and classical fair use. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010). Nominative fair use applies when a defendant uses a trademark in reference to the plaintiff's own products. *Id.* Classical fair use occurs when a defendant uses a plaintiff's mark to describe its own product. *Id.* The latter variety is the type of fair use that Defendants invoke here.

A defendant may establish the defense of classical fair use by showing that: (1) defendant's use is not as a trademark, (2) use of the term must be fair and in good faith, and (3) the term is descriptive of defendant's goods and services. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). Although the classical fair use defense is generally not available if there is a likelihood of consumer confusion, the defendant raising the defense need not negate *any* likelihood of consumer confusion. *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 938 (9th Cir. 2017) ("Some consumer confusion is compatible with fair use, and when a plaintiff chooses 'to identify its product with a mark that uses a well known descriptive phrase"' it assumes the risk of some confusion." (citation omitted)). Although the burden of establishing every element of fair use rests with the defendant, the burden of establishing likelihood of confusion rests with the plaintiff. *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 935, 938 (9th Cir. 2017). The Ninth Circuit has recognized that because of its fact intensive nature, the fair use analysis is not generally resolvable at the pleading stage. *Fortune Dynamic*, 618 F.3d at 1031.

VFB argues that Defendants' use of "Vampiro" on its Vampiro Cocktail is as a trademark. The Lanham Act defines a trademark as something used "to identify and distinguish . . . goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127. "To determine whether a term is being used as a mark, we look for indications that the term is being used to 'associate it with a manufacturer.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand*

*Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010) (quoting *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984)). "Indications of trademark use include whether the term is used as a 'symbol to attract public attention,' which can be demonstrated by 'the lettering, type style, size and visual placement and prominence of the challenged words[.]'" *Id.* (internal citations omitted). Here, the use of "Vampiro" on Defendants' product as pictured in the images submitted by both parties shows that the word is in stylized, large font across the center of the beverage can, in white font against a red background. *See* FAC, Ex. A. The description "FIZZY GRAPEFRUIT COCKTAILWITH CITRUS & SPICE" appear beneath "Vampiro" in smaller font, giving the impression that the smaller text is a descriptor and Vampiro is a mark for the product.

At this stage, the Court cannot conclude as a matter of law that Defendants' use of "Vampiro" is not as a mark, and thus Defendants cannot satisfy the first element of the classical fair use test at this stage.

Accordingly, the Court **DENIES** Patco's MTD to dismiss Counts I, II, and III under the Lanham Act.

**B. Count IV: Lanham Act False Advertising**

Defendants argue that VFB lacks both constitutional and statutory standing to assert Lanham Act false advertising claims related to the Margarita Cocktail and the Vampiro Cocktail. MPL MTD at 11. The Court addresses constitutional standing under Article III first, as it must, under the Rule 12(b)(1) standard. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011).

**i. Constitutional Standing**

Article III standing requires a plaintiff to show injury-in-fact, causation, and redressability. *Id.* At issue here is whether VFB can satisfy the injury-in-fact requirement. To establish injury in fact, a plaintiff must show harm that is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011). Plaintiffs in a Lanham Act false advertising suit establish injury in fact by plausibly alleging that "some consumers who bought the defendant['s] product under [a] mistaken belief" fostered by the defendant "would have otherwise bought the plaintiff['s] product." *TrafficSchool.com, Inc.*, 653 F.3d at 825 (citation omitted). This can be demonstrated through "a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Id.* Constitutional standing has been found in false advertising cases

where the parties are direct competitors and where it is shown that that consumers chose the defendant's products over the plaintiff's as a result of deceptive advertising. *See id.* at 826; *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 998 (N.D. Cal. 2013).

Defendants argue that VFB has not and will not suffer any concrete injury as a result of any advertisement of the Margarita Cocktail or Vampiro Cocktail because VFB does not currently sell any pre-mixed cocktail products. MPL MTD at 23; Patco MTD at 27. Defendants point to VFB's admission in another proceeding that it did not, as of October 2, 2020, have any sellable inventory of the Vampire Bloody Mary, the only liquor cocktail in its family of products. *See* MPL RJN, Ex. A at 3 [Doc. # 19-2] ("Plaintiff admits that it currently does not have sellable inventory of its Vampire Gourmet Bloody Mary").

VFB's Chief Executive Officer and counsel, Michael Machat, asserts that VFB previously sold the Vampire Bloody Mary in limited quantities and advertised it at beer festivals in 2016 and 2017, and VFB did not have sellable inventory in 2020 because it destroyed a stale batch. Machat Decl. at ¶¶ 31-46 [Doc. # 33]; *see Safe Air*, 373 F.3d at 1039 (permitting the Court to consider affidavits or other evidence to resolve a factual attack under Rule 12(b)(1)). He attests that VFB has arrangements with another manufacturer to produce more of the Vampire Bloody Mary and with experienced industry salespeople to sell the product, and that VFB will resume sales after the current pandemic subsides. *Id.* at ¶¶ 47-48. VFB submitted a new Certificate of Label Approval to the TTB for the Vampire Bloody Mary on January 23, 2020. *Id.* at ¶ 15.

This evidence that VFB is prepared to sell the Vampire Bloody Mary indicates that VFB could suffer non-speculative, imminent harm from Defendants' actions. VFB argues that by advertising the Margarita Cocktail and Vampiro Cocktail as "cocktails," even though they are not made with distilled spirits but rather with agave wine, Defendants make a lower-cost product and pay far lower taxes than makers of cocktails containing tequila and vodka. Compl. at ¶¶ 35, 65. Thus, consumers may purchase the Margarita Cocktail or Vampiro Cocktail more cheaply. VFB has established a "chain of inferences showing how defendant's false advertising could harm plaintiff's business" that is sufficiently imminent to satisfy Article III standing. *TrafficSchool.com, Inc.*, 653 F.3d at 825. This case is thus distinguishable from *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164 (3d Cir. 2001), in which the court found no injury-in-fact when the plaintiff, a foreign vodka producer, had never sold or prepared to sell any vodka product in America and therefore cannot have directly competed with the defendants' vodka. *Id.* at 176-77 ("The defendants' allegedly false advertising cannot have harmed the plaintiffs by channeling their customers toward [defendants' vodka] when the plaintiffs have not even begun offering their product for sale in the United States. . . . the plaintiffs could have asserted their

false advertising and false designation of origin claims . . . if they had marketed their vodka in the United States[.]"). Article III's injury-in-fact requirement needs only "an identifiable trifle" of harm, and VFB's inference of imminent harm satisfies that low bar. *Id.* at 177 (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n. 14 (1973)).

**ii. Statutory Standing**

To establish statutory standing under the Lanham Act, however, VFB must satisfy a more demanding standard. To bring suit under the Lanham Act for false advertising, a commercial plaintiff must establish that "(1) [its] interests fall within the zone of interests protected by the statute, and (2) [its] injuries are proximately caused by a violation of the statute." *Redbox Automated Retail, LLC v. Buena Vista Home Entm't, Inc.*, 399 F. Supp. 3d 1018, 1034 (C.D. Cal. 2019) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). The Supreme Court has held that "to come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32. It further articulated that "a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Because VFB does not currently sell the Vampire Bloody Mary and its previous sales were limited distributions at beer festivals or a handful of liquor stores, VFB does not identify any economic injury flowing from Defendants' current advertising of the Margarita Cocktail and Vampiro Cocktail. VFB does not allege prior economic injury, and any future economic injury VFB may suffer when it restarts distribution of the Vampire Bloody Mary is too attenuated to be considered proximately caused by Defendants' advertising.

Even more attenuated is VFB's general argument that false advertising of the Margarita Cocktail and Vampiro Cocktail harm VFB's sales at restaurants and grocery stores of other types of alcohol, specifically Vampire wine and Vampyre vodka. VFB alleges the following false or deceptive statements by Defendants: (1) the Vampiro Cocktail is made from grapefruit, is made from 100% agave, and is a cocktail (therefore inferentially made with liquor, rather than wine), and (2) the Margarita Cocktail is a margarita, is made from 100% agave, and is a cocktail (therefore made with liquor). VFB does not plausibly argue that any of these statements could directly cause consumers to purchase less of VFB's red wine or vodka, considering the differences between the types of beverages. Even if it is true that consumers could be misled into believing the Vampiro Cocktail or Margarita Cocktail contain distilled spirits or natural

ingredients, it is not clear why those consumers seeking to purchase a pre-mixed cocktail would instead reach for wine or vodka. Characterizing VFB and Defendants as direct competitors because both make alcoholic beverages would dramatically expand the "zone of interest" in which a plaintiff may sue for false advertising under the Lanham Act. *See TrafficSchool.com*, 653 F.3d at 826 (commercial or competitive injury is "generally presumed . . . when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers"). And although indirect commercial injuries may create standing under the Lanham Act, "general harm" to the market, including deception of consumers, "is an insufficient basis to support a finding of a commercial injury to Plaintiff." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV 18-04189-PHX (JATx), 2019 WL 3840988, at *7 (D. Ariz. Aug. 15, 2019). Accordingly, VFB has not alleged proximate cause necessary for Lanham Act standing.[5]

The Court therefore **GRANTS** Defendants' MTD Count IV, for false advertising under the Lanham Act, **with leave to amend**.

### C. Counts V and VI: California's Unfair Competition and False Advertising

Statutory standing under the UCL and FAL is even more constrictive. To establish standing under the UCL and FAL, a plaintiff must show (1) a sufficient economic injury in the form of a loss or deprivation of money or property, and (2) that the economic injury was caused by the unfair business practice or false advertising. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). In *Kwikset*, the court explained that, while there is no exhaustive list defining economic harm under the UCL or the FAL, the injury must nonetheless take the form of lost money or property. *Id.* at 324.

As discussed above, VFB fails to identify the economic harm caused by Defendants' alleged false descriptions of the Margarita Cocktail and Vampiro Cocktail. VFB has alleged, however, economic harm arising from Defendants' alleged trademark infringement with the Vampiro Cocktail. Therefore, to the extent VFB's state law unfair competition claims parallel VFB's trademark infringement claims based on Defendants' Vampiro Cocktail, those unfair competition claims survive. *See Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1161 (C.D. Cal. 2017) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) ("actions pursuant to . . . § 17200 are 'substantially congruent' to claims made under the Lanham Act")).

[5] Although VFB argues that the Vampiro Cocktail's use of the Spanish word for "vampire" constitutes false advertising that proximately harms VFB's sales of other vampire-themed goods, VFB does not in fact make these allegations in its Lanham Act false advertising claim. *See* Compl. at ¶¶ 65-68.

The Court thus **GRANTS in part** and **DENIES in part** the MTDs with respect to VFB's claims under the UCL and FAL, with leave to amend.

## V.
## CONCLUSION

In light of the foregoing, the Court issues the following orders:

1. Patco's MTD [Doc. # 18] is **DENIED** with respect to Counts I, II, and III for trademark infringement under the Lanham Act, and Count V to the extent it alleges a parallel unfair competition claim; and

2. MPL's MTD [Doc. # 19] is **GRANTED**, **with leave to amend**, for lack of standing with respect to Count IV for false advertising under the Lanham Act and unfair competition under California law.

VFB shall file its First Amended Complaint ("FAC"), or inform the Court and Defendants that it does not intend to amend its Complaint, within 21 days after the date of this Order. Defendants shall file their response within 21 days after VFB files and serves its FAC, or they are notified of its intent to proceed on the Complaint.

**IT IS SO ORDERED**.